We have four cases on the calendar this morning, two from the claims court, one of which is being submitted on the briefs and won't be argued, two from the Patent Office, a patent case, and a trademark case. Our first case is from the Court of Federal Claims, Walter Strand v. United States, 2016-2450. After we hear this case, we will assess briefly and return with a slightly modified panel that will be no less distinguished than this one. So we will hear Mr. Strand's case, Mr. Green. Good morning. Before I go any further, I want to introduce Lieutenant Miriam Austin, she's with the Office of the Judge Advocate General for the United States Navy, seated with me at council table. May it please the Court, the Secretary determined that based on the undisputed facts in the policy reasons, Mr. Strand was not entitled to be retired honorably, as recommended by a panel of the Board for Correction and Naval Records. Now according to Strickland and others... Can we get right to one of his reasons, that there's a long and documented history of domestic violence and involvement in what's called the FAP program? Sure. Where is that borne out by the record? As far as I can tell, and I know the record, you tried to supplement, they opposed, they frankly, given their explanation of what it said, I don't understand why they opposed, but as far as I can tell, there are two incidents. How is that a long history of domestic violence? Well, respectfully, it's domestic violence issues, which does not necessarily encompass convictions. I just wanted to be clear on that point. Oh, I understand that, but at least the tenor of the Secretary's decision is that this individual has had a long and sustained history of domestic violence, and I don't see that in the record. I see a, what, a 2007 incident, is that right? And then the shooting incident for which he was removed. That's correct. Clearly, those are both very serious, but it seems to be a mischaracterization to call that a long history. Well, there is, I don't want to be improper here, but there is other information in those records that is farther than 2007, and Mr. Strand's command, as Mr. Strand notes in his brief, would have been aware of those other incidents due to the fact that the command is involved in the Family Advocacy Program when it pulls in one of the command's service members. Why weren't they in the administrative record? In part because the Family Advocacy Program is not there to punish a service member. It's there to persuade the service member to get the help that the Navy believes he or she needs. And so in the absence of a disciplinary action or some sort of counseling entry, the Navy does not routinely log in the service records the service member's involvement in the Family Advocacy Program. Now, if I may also respond that... Can I ask you then, if we conclude that the trial court erred and we send this back and order the court to send it back to the Corrections Board, is there a mechanism for getting that information in the record? The Corrections Board could certainly access those records, so long as, in accordance with Atkins, they gave... And those FAP records, they're not the service records, but they're some other kind of documentary records? They don't have to pull in people to testify or anything? I'm sorry to have interrupted you. They are maintained in a separate location, in part because of privacy, but also to not... Isn't your point that whether there's a long history or not, isn't the point that there is a history? Correct. And so where is the authority here? Is it in the Secretary or in the Board, ultimately? The authority for what? For correction of Naval records. Well, ultimately, excuse me, the Secretary is the ultimate authority. That's what the Strickland holding from this court tells us, and that's been the practice for many years, before Strickland and after Strickland, up to, I think, Chevalier is a more recent case where the court affirmed that principle. And so, in this case, the Executive Director for the Board determined that the relief that the panel had recommended may not be appropriate in view of the seriousness of Mr. Strand's felonious misconduct, and forwarded that recommendation to the Secretary to make the ultimate decision, in accordance with 10 U.S.C. 1552 and the Navy regulations. But to go back to your question, Your Honor... Just to clarify, I'm sorry, the Secretary owed no deference to the Board in making his recommendation. Do I understand that correctly? The Secretary... According to Strickland, the Secretary is entitled to reject a Board recommendation that in his estimation is not supported by the record before the Board. And I want to ask you one other question about the longstanding history. Did that come from the statement of the CEO? Do I remember that correctly? Yes, ma'am. And was that statement disputed or not disputed on the record? It was not disputed. In fact, the fact that it was not disputed is reflected in the decision by the panel of the BCNR, because they recited that same fact after reviewing the entire record, and it did not indicate that there was any reason to doubt the veracity of that fact. Moreover, there's nothing in the record that indicates that Mr. Strand had petitioned the BCNR to review the accuracy of that statement and perhaps have it stricken from his record or modified in some other way. And so, from the Secretary's perspective, he was entitled to take that statement at face value. And I haven't even mentioned that there's also this presumption of regularity and this presumption that military officers, such as Mr. Strand's former commanding officer, discharged their duties lawfully and in good faith. That also goes back several years. But I get all that. But was he represented when he went through this BCNR process, or was he – it was my understanding that he only got counsel after the Court of Federal Claims appointed him pro bono counsel. Your understanding is correct. But at least in their papers, they do seem to dispute that there was a longstanding history. As we read their papers, this is a post – sort of a post hoc argument. They now dispute that there was a longstanding history. But there's nothing in the record that disputes that history. And in fact – But there's nothing in the record that shows that history either except this statement, which doesn't point to any documentary evidence. Well, I would respectfully disagree with that, Your Honor. There's a fitness report from – that we have inferred and has not been disputed that refers to – it's a negative fitness report that stems from this 2007 stalking incident. No, no, I get that. I mean, certainly everybody agrees about the 2007 incident and then the shooting incident. And if you consider two incidents a longstanding history, then maybe you're right. But you're alluding to other incidents of domestic violence and saying it's undisputed. And I don't see how it is, at least after he got counsel. I mean, they specifically wrote in one of their briefs that they dispute that. And, you know, there may be a disagreement about characterization or the facts or the like. But I assume they're not taking sanctionable positions in briefs before the court of federal claims. Well, let me – I apologize if I was unclear. From the Secretary's perspective, the statement was undisputed. And it wasn't until he got to court – I get that. But when it gets to court, the court gets to test that conclusion for substantial evidence. And it doesn't have to rely on a conclusory statement by the commanding officer. It can demand some kind of substantial evidence to support that. And you can't fall back on he didn't dispute that at the time. Well, I would respectfully assume, Your Honor, that the burden here was on Mr. Strand to come forward with some evidence that would show that that statement was incorrect. Now, the evidence that Mr. Strand has pointed to in his brief simply doesn't do that. That evidence shows that there were no nonjudicial punishments or other disciplinary actions, which we've sort of touched on already. That evidence includes letters from Mr. Strand's mother and other persons who there's no reason to believe that they were competent to speak about Mr. Strand's history beyond the event that ultimately led to his discharge. And moreover, the BCNR considered all of that information and did not find that it had controverted that statement. When you say – well, it seems to me that you're right, he has the burden. But when he comes back and says there's actually not a longstanding history, it's only two incidents and points to the stuff in the record and that's all I see, are you saying he has to disprove all of this other stuff that isn't part of the record? He has to come forward with evidence that would cast some doubt on that statement. Well, why isn't his pointing to the evidence and saying, look, here are two incidents late in my career, occasioned by basically the same set of unfortunate circumstances? That doesn't demonstrate a long history. Doesn't that at least put it into dispute and then require some kind of further rebuttal from you? Well, we attempted to provide that rebuttal. I know, but that's the problem here. I mean, it baffles me why, unless it's just going to actually prove your point, why this isn't in the record or why the trial court didn't allow it. It does seem to me that the record is kind of thin on this point, which could have been solved by letting this stuff in the record. Although maybe the answer is if it wasn't before the correction before, then it needs to go back to them to look at too. Certainly, Your Honor. I would also point out, and we make this point, I believe it's in our reply brief, that this issue of the domestic violence is, I don't want to characterize it as a distraction, but what I mean is, or what I'm trying to say is, the Secretary really didn't need to rely on that in order to reject the recommendation of the Board because the Secretary had available to him the undisputed facts of Mr. Strand's shooting incident, that conviction, and the policy explanation provided to him. Absolutely, but he did rely on it, and we have no way of knowing whether the shooting incident alone would have been sufficient for him to overturn the Board of Corrections decision or whether it was the shooting in combination with this long history of domestic violence. On that point, Your Honor, I would just point out that when the Executive Director sent this decision up to the Secretary, he specifically focused in on the felonious misconduct and not necessarily this other incident. I had reserved five minutes for rebuttal, and I see I'm eating into my rebuttal time. If the Court doesn't have any other questions, I'll... We'll save this for you. Thank you, Mr. Green. Thank you. Mr. Hanback. Good morning, Your Honors. May it please the Court, Lucas Hanback on behalf of Walter Strand. With me today is Jeff Shio, also on behalf of Mr. Strand. Your Honors, we've talked already about one of the two reasons here, the alleged long-standing history of Family Advocacy Program involvement in domestic violence. As Judge Hughes has observed, there's nothing in the record that supports that, and all of the fitness reports in the record show the opposite. Except the shooting. The shooting is pretty clear, right? Well, but Mr. Strand has never denied the shooting. And the fact that he didn't deny it isn't the point. The point is the Secretary was entitled to make a judgment, and there was clearly a felonious incident. Well, respectfully, Your Honor, the courts have for now 60 years held that the Secretary is not entitled to disregard the Board's decision where it's supported by the evidence, and I direct Your Honor's attention to page 088 of the appendix, which is the Board's decision where it points to this exact same statement by Captain Starling. It doesn't use quotation marks, but it used the exact same language. So the Board already considered this exact same contention, and they granted Mr. Strand relief anyway. For 70 years, the courts have held that the Secretary can't just disagree with his Board and overturn it. He has to act through them. And here, if we look at his reasoning, he says, I disagree with the Board's reasoning, and he points to the same thing that they've already considered and nothing else. That's not sufficient. Wait, wait. You're saying that the Board found differently on the facts regarding the longstanding domestic violence? Is that what I hear you saying? I'm saying that, Your Honor, it's been admitted. There's nothing in the record that goes to the statement except the statement itself. And the Board has already considered that statement in whatever it encompasses. Well, okay, but they considered it, but they didn't say that it's wrong, or did they? Tell me on page 88 where that is. Well, so if you look at page— It's paragraph D. I'm sorry, paragraph D, Your Honor, and it starts about halfway through. It says, his commanding officer recommended separation under other than honorable conditions, in part, that he had a longstanding history of family advocacy program involvement in domestic violence issues. That is Mr. Captain Starling's language. So whatever that statement means, it's been considered by the Board and factored into the decision here. Sure, but that doesn't mean the Board said it was incorrect. The Board considered all the facts and came up with a recommendation for the Secretary, and then the Secretary considered all the facts and said, I have a different view. And I don't see where it sounds like you were just saying that the Secretary found facts that were different from the Board, and I don't see that. No, Your Honor. The Secretary didn't find facts different than the Board, and that's the important part here. The cases for 60 years now have said that where you're looking at the same facts and the Board's interpretation is reasonable and supported by the facts, the Secretary can't just overrule the Board's decision. That stretches all— But if the Secretary finds the Board's decision unreasonable, he certainly can't, can't he? Well, he might. That's what he did here. He said, I disagree with the reasonableness of this recommendation, and I would not grant the relief. Well, I don't think that—he doesn't use the term he disagrees with, the reasonable, Your Honor. Well, I mean, that's the obvious conclusion to draw. I mean, he's not disagreeing with the facts. He disagrees with the Board. Are you really saying that the Secretary can only overturn a decision if he concludes that there's different facts than the Board found? Rather than disagree with their judgment? I think that that's a fair reading of the cases for 60 years now, Your Honor. What about Strickland? Well, in Strickland is a very illustrative example, and this also goes to the Navy's other articulated reason about core values, which I'd like to get into in a moment. Strickland was a Navy petty officer who was convicted of a violent crime, a sex crime against a child. He was discharged just prior to his 20-year retirement. He pursued his remedies up through the Boards and was overturned by the AGC and ultimately prevailed and was retired. And so, you know, if you're going to say that you disagree with the Board's reasoning, you have to give more than one sentence that the Board already considered and found didn't warrant denying Mr. Strand relief. And turning to the core values here, it's important to understand why the Board exercises its powers. It corrects injustices. And what's happened here is that Mr. Strand admitted that what he did was wrong. He had one mistake at the end of a 19-year career where everything in the record is stellar. He's a top performer, top marks. He gets awards for good conduct, awards for his meritorious performance. He makes one mistake. But should the courts be managing the personnel of the Navy? Well, Your Honor. Shouldn't that be the job of the Secretary? It is the job of the Secretary, Your Honor, but the Boards have the power to direct certain personnel actions, and for 70 years that's been the law. Subject to the approval of the Secretary? Well, not subject to his absolute discretion, Your Honor. Subject to the test under the Administrative Procedure Act. What about where he said specifically, granting the relief recommended by the Board is wholly inconsistent with Navy Corps values and practice in similar cases involving discharge for criminal conduct. Isn't that, in essence, saying that the recommendation is unreasonable? No, Your Honor, and here's why. Look at what he says. Granting relief recommended by the Board is wholly inconsistent with Navy Corps values. What's inconsistent with honor, courage, and commitment about the idea of redemption, about the idea of paying penance for what you've done? I hear what you're saying, but I think that kind of thing of looking at the conduct and determining whether it's consistent, whether somebody was convicted for six years and served three years in prison, whether that is consistent with Navy Corps values and whether you're going to focus on penance versus the crime to begin with, that's not something for the Court to judge. Well, Your Honor, it is for the Board to judge, and the Board judged it and found he merited relief. But it's also for the Secretary to judge, and I think you alluded to the fact that he can do that as long as it's consistent and supported on our review by the APA principles. And so we're not going to second-guess it if his decision is supported by substantial evidence. Now, I do think you have an argument on the domestic violence point that it's pretty thin, although I wonder if we do order it sent back that it's going to come out the same way because what's going to come out is that even though there may not be incident reports in the service records, there is a long history of paper of him participating in the FAA program itself. And if that's the case, then it seems like a waste of time. So there are two questions that you just asked, Your Honor. The first is, is it going to turn out the same way? The Navy already told you in their docketing statement it is, and that's why this request for remand shouldn't be honored. It's just an attempt to evade judicial review after they've stood on the record and said it's sufficient. But as to what's in those files, if you read the proceedings below... Do you know what's in those files? We do, Your Honor, because the Navy improperly injected them into the proceedings below after they were stricken, and we had to litigate them on the merits to protect our client. That first incident that Your Honor talked about and that Mr. Green has referred to about stalking, what happened in that incident, what's in those files, is that after Mr. Strand returned from his last combat deployment supporting operations in Afghanistan, he found his wife had left him unexpectedly, taken his children, cleaned out his bank accounts, and wasn't talking to him, wouldn't let him see his children for months. He found out where she was living, went to her apartment, and confronted her on the sidewalk. She had three men beat him up, throw him off the premises, and she called police on him and reported him for stalking. No, I've read your papers. I know what the facts are there, but, you know, you're asking us to overturn policy judgments that seem like the Secretary's entitled to make. Well, the Secretary's not entitled to make these policy judgments, Your Honor. Again, no substantial evidence. We've talked about that. He's entitled to make them if there's substantial evidence that supports his arguments.  I mean, it seems to me that you're arguing almost some kind of rule that the Secretary's bound by the Corrections Board, absent some change in facts or some kind of explicit proclamation that it was unreasonable, but I just don't see that there's anything in the case law that supports that. Well, the case law says that where the Board has reached a reasonable conclusion, the Secretary doesn't have discretion to just overrule that. No, but if he finds that it's not an appropriate conclusion and his decision is supported by substantial evidence, then he can't, can't he? That's what we're here about. No, but see, you're going back and forth between two things. You're going back and forth between for 70 years we've said the Secretary can't overrule the Corrections Board. That's just not right. What the Secretary can't do is overrule the Corrections Board without substantial evidence. You're right on that, but you leave out that part when you talk about 70 years. So we're talking about substantial evidence here. Sure, Your Honor. And if we did agree with you that there's a lack of substantial evidence, then we can either affirm or we can vacate and remand for the Secretary to actually provide more substantial evidence. Well, I think that you could affirm. I don't think a vacate and remand is appropriate because there is no substantial evidence, and if there was, the Secretary would have provided it. It's not there. And so... Well, it seems like there's a dispute between the two of you, at least on the domestic violence front, about whether there is evidence or not. Sure, Your Honor. But let's remember there's also another articulated reason on this piece of paper that we have to consider here, and we've talked about core values. If you read the Navy's papers, one of their principal contentions is that whenever they invoke the core values, and here they've done it very briefly, they've basically said our core values are on a courage and commitment, and this is inconsistent with them. They say that that is at the absolute discretion of the Secretary to determine the standard. Do you want me to address your cross-appeal? I'm sorry, Your Honor. Do you want to address your cross-appeal? I would, Your Honor, but I'm prepared to only take about a minute to do that. It's your time. Sure, Your Honor. With respect to the core values, remember here, the Navy is also bound by its core values. Mr. Strand has now for almost a decade been out, you know, in the civilian world trying to make amends. He's set himself right with the State, with his victims, with his family. This is a guy who is living on a couch so that every spare cent he earns can go to support his children, one of whom has a serious medical condition, and what prevents him from getting gainful employment based on the training and expertise he got while he was in the service is one black mark in his record. What we want people who get in the criminal justice system to do is to rehabilitate themselves and go back to a productive civilian life, and this one black mark is what's preventing it. You're arguing to us that we're a jury. The issue here is the legal relationship between the Secretary and the Board. Yes, I understand, Your Honor, but the legal relationship between the Secretary and the Board hinges on this invocation of core values. What the Navy hasn't explained and what the cases say that he has to do when he points to a policy reason like this is explain it, and there's no explanation how denying Mr. Strand relief so that he can move on with his life is consistent with Navy core values. This is a guy who made one mistake. Why is it consistent with honor, courage, and commitment to say that for the rest of his life he should have a hard time putting food on his table? That's not consistent with the Navy's core values, and, Your Honor, to return to your point about the counterclaim that the government filed, this is a pretty straightforward application of the Court of Federal Claims jurisdictional statute. The statute is 28 U.S.C. 2501. It establishes a strict 6-year limitation period for claims that are filed in that court. This court has held that that's an independent jurisdictional requirement in cases like RANA and Rocky Mountain Helium. Those are cited in our papers. And here, at the absolute latest, the government's counterclaim started to run on June 26, 2009 because, as of that date, all the events that fixed Mr. Strand's liability to the government had occurred. Doesn't 2415F work against you? No, it doesn't, Your Honor. I'm sure the government will give you its views on that in a moment. But if you look at 2415, they've cited two tolling provisions. The first is subsection F. It starts, The provisions of this section shall not prevent the assertion. It's referring to 2415 itself. It's a tolling provision for the limitations in subsections A, B, and C. Similarly, subsection D, which is another tolling provision that they've attempted to invoke, says that, and except as otherwise provided by Congress. Congress has otherwise provided that the Court of Federal Claims cannot hear cases that accrued more than 6 years prior. And so this is just a fairly straightforward application of a 6-year statute of limitations. You're saying this F provision isn't relevant to 2501? That's what I'm saying, Your Honor, because it applies the provisions of this section. That's when subsection F applies. And this section is referring to section 2415 itself, not to 2501. And I see I'm eating into my rebuttal time, Your Honor, so unless there are further questions, I'll save it for you. Mr. Green has about three and a half minutes. Just a couple of quick points here, Your Honors. And I think the Court's picked up on this, but I just want to be sure that we articulate it as well. The 60 years worth of precedent that Mr. Strand's attorney refers to that allegedly or purportedly holds that the Secretary can't just disregard a decision by the Corrections Board refers to the cases in proper Weiss, Herzog, and those cases. And in each of those cases, the Court's found that the Secretary had violated section 1552 because he'd involved a military advisor in the process of correcting records. And in each of those cases, all of the evidence favored the recommendations provided by the Corrections Board. And so that's not the circumstance we have here. At the very least, we have evidence on both sides. We have Mr. Strand's post-discharge conduct and satisfactory service, but we also have the other evidence that the Secretary relied on. And so it's not the circumstance where all the evidence would favor the recommendation. And in Strickland, in referring to Strickland, Mr. Strand's counsel glosses over the distinction that the issue in Strickland was legal error. The Discharge Board and the BCNR and the Secretary all had committed a legal error in applying the incorrect regulation to Mr. Strickland's discharge. There's no allegation of legal error here. Mr. Strand requested from the Board equitable relief in the form of constructive credit toward retirement and an honorable retirement. He didn't identify any legal error that is analogous to the legal error that's at issue in Strickland. And so the facts of Strickland and the facts of this case don't line up. Can you just take a few minutes? I think we get you on Strickland. Can you take a minute and address the cross-appeal? Why isn't the claim time-barred? Is it because they included in their complaint a cause of action to seek that money back? I'm sorry. Go ahead. Why isn't your claim for refund time-barred? Is it because it's a counterclaim to their claim to get the money back or to not have to repay it? Two reasons, Your Honor. One is the reason you just described. It's basically the mirror image of one of their causes of action. What if they hadn't included that money claim in their complaint? It would have been barred by 2415, more than likely. Okay. And the second reason is that 2501... And you would have been left with administrative attempts to recoup that money. You couldn't have gotten the court to order it. Perhaps. Or 2415-F provides that an untimely permissive counterclaim can be applied as a set-off. The second reason why Mr. Strand is incorrect on this point is that 2501 provides for the statute of limitations for plaintiffs to file claims in the Court of Federal Claims. The government is never the plaintiff in the Court of Federal Claims. 2415 refers to causes of action brought by the government. So on the faces, the statute 2501 doesn't apply. I would also like to point the court to three cases in which the court has analyzed the timeliness of a compulsory government counterclaim and found that under 2415-F that there was jurisdiction, even though the counterclaim was filed six years after it accrued. Those cases are Southern California Edison v. United States, 226-F1349, United States v. Hanover Insurance, 82-F31052, and Sealand Services v. United States, 493-F2nd-1357. And in none of those cases did the court analyze this jurisdiction question under 2501. They all refer to 2415. And so that indicates that the statute of limitations provided in 2501 would not apply to a government counterclaim filed in the Court of Federal Claims. Thank you, Mr. Green. Thank you. Mr. Hanback, we'll give you two minutes for your rebuttal on the counterclaim. I appreciate that, Your Honor. May it please the Court, Your Honors, first, quickly, 2501 says, Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred. It doesn't apply only to plaintiff's claims. It applies to every claim. Now, I'd also like to briefly address Strickland. Here's the test from Strickland. Other circuits, too, have held that the Secretary is authorized to reject a board recommendation so long as he Is this the cross-appeal, the counterclaim? No, Your Honor. I don't think you have the last word on the main appeal. Okay. Fair enough, Your Honor. I don't want to eat up your time, but I think at least I have the cross-appeal. You handled this below pro bono, and you're handling it now. I just wanted to say I appreciate it. I think the government and the courts are well served when we have adequate representation on both sides, and I think you've done an excellent job here. Well, thank you, Your Honor. We take it seriously. And as we pointed out, Your Honor, you asked questions about the internal tolling provisions of 2415. All we would point you to is the language of the text itself. The analysis starts with the language of the statutory text, and that text says that those provisions apply internally to 2415. But how about the second sentence that says, if it's time barred, it may be asserted only by way of offset. Isn't this an offset? No, Your Honor, because the government has never pled an offset. Offsets are an affirmative defense that are waived if they are not raised, and the government never pled an offset in the court below, so it is not entitled to assert an offset now. The government did make a reference to that, I believe, in a footnote in one of their filings, and to the extent that the government intends to take an offset here or attempt to, that's improper, and this court should rule as a matter of law that that's been waived. I see my time is about up, Your Honor. Thank you, Mr. Handback. We'll take the case under advisement. Thank you, Your Honor.